**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
FRANCISCO AYALA DE JESUS, FREDY
SALUSTIO FLORES, *individually and on behalf of others similarly situated*,

                                  Plaintiffs,

                 -against-

P&N CUISINE INC., NIMNUAL
LIKITUARIN,

                                  Defendants.
------------------------------------------------------------------X

**REPORT & RECOMMENDATION**

**20-cv-03619 (RA) (JW)**

**TO THE HONORABLE RONNIE ABRAMS, U.S.D.J.:**

Before the Court is a reference for a damages inquest as to defaulting defendants P&N Cuisine Inc. (d/b/a Thai Select) and Nimnual Likituarian (the "Defendants"). For the following reasons, I recommend that plaintiffs Francisco Ayala de Jesus ("Plaintiff Ayala") and Fredy Salustio Flores ("Plaintiff Salustio," together the "Plaintiffs") be awarded damages from Defendants under the New York Labor Law ("NYLL") in the amounts set out below, for unpaid wages, spread-of-hours pay, failure to keep records and provide wage statements, unlawful deductions, and liquidated damages, plus pre-judgment interest, and attorneys' fees and costs.

## BACKGROUND

### A. Factual Background

In light of Defendants' default, the well-pleaded allegations in Plaintiffs' Complaint, dated May 8, 2020 (Dkt. No. 1), are deemed to be true, except for those allegations relating to damages. See Santillan v. Henao, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.

1

1981). With respect to Plaintiffs' claims for damages, Plaintiffs have submitted their Proposed Findings of Fact and Conclusions of Law, dated July 30, 2021 (Dkt. No. 38), with supporting declarations and exhibits, which have been submitted in connection with this damages inquest.

Plaintiffs are current and former employees of a Thai restaurant located at 472 9th Avenue, New York, New York, operating under the name "Thai Select." Compl. ¶ 1. Plaintiffs allege that they were "ostensibly" employed as delivery workers, but in reality spent "a considerable part of their work day performing non-tipped duties." Compl. ¶ 4; Proposed Findings ¶¶ 9-10, 29-30. Plaintiffs were therefore classified as tipped workers and were paid the tipped minimum wage, though their daily duties constituted in substantial part of non-tipped work. See Compl. ¶¶ 86-92.

Plaintiffs claim that they worked "in excess of 40 hours per week, without appropriate minimum wage, overtime, [or] spread of hours compensation." Compl. ¶¶ 5-7. Plaintiffs further allege that Defendants did not pay Plaintiffs their wages in a timely manner, Compl. ¶ 8, and unlawfully appropriated Plaintiffs' tips. Compl. ¶ 12; Proposed Findings ¶¶ 23, 43. Plaintiffs also allege that they were not paid at all for their last five weeks of employment with Defendants. Proposed Findings ¶¶ 20, 40.

Finally, Plaintiffs allege that Defendants did not comply with the recordkeeping requirements of the Fair Labor Standards Act ("FLSA") and the NYLL, "by failing to maintain accurate and complete timesheets and payroll records." Compl. ¶ 99. In addition, Plaintiffs state that Defendants "failed to provide Plaintiffs

2

and other employees with accurate wage statements" as required by the NYLL. Compl. ¶ 105-106.

B. **Procedural History**

Plaintiffs commenced this action by filing a Complaint on May 8, 2020 (Dkt. No. 1). As of October 30, 2020, Defendants had failed to appear in this action; the Honorable Ronnie Abrams, U.S.D.J., ordered Defendants to respond to the Complaint by November 20, 2020 (Dkt. No. 13). Defendants failed to do so. On December 15, 2020, Plaintiffs filed a Motion for Default Judgment as to all Defendants (Dkt. No. 26). Judge Abrams granted the motion in part and denied it in part. See Memorandum Op. and Order, dated June 10, 2021 (Dkt. No. 34). Specifically, the District Judge found that Plaintiffs had established liability for the following causes of action: (1) violation of the minimum-wage provisions of the NYLL; (2) violation of the spread-of-hours provisions of the NYLL; (3) violation of the recordkeeping and wage-statement provisions of the NYLL; and (4) claims for unlawful tip deductions as to both Plaintiffs, as well as a claim under § 193 of the NYLL as to Plaintiff Salustio. Id. at 5-9.

The Honorable Kevin N. Fox subsequently ordered Plaintiffs to file proposed findings of fact and conclusions of law, and an inquest memorandum of law accompanied by supporting affidavits and exhibits, to support proof of damages. See Order, dated July 9, 2021 (Dkt. No. 36). Plaintiffs complied with the order and on July 30, 2021 filed the Inquest Memorandum (Dkt. No. 37), the Proposed Findings of

Fact and Conclusions of Law (Dkt. No. 38), the Declaration of Michael Faillace in Support of Inquest (Dkt. No. 39), and the Proposed Default Judgment (Dkt. No. 40).

Judge Fox's Order further ordered Defendants to prepare and file any opposing materials by August 20, 2021. (Dkt. No. 36). They did not. On February 1, 2022, the matter was reassigned to this Court for an Inquest on Damages.

## DISCUSSION

### A. Applicable Legal Standards

A "default is an admission of all well-pleaded allegations against the defaulting party." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). "There is no question that a default judgment establishes liability." Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 854 (2d Cir. 1995). A default judgment does not, however, address the question of damages. Thus, when conducting a damages inquest, all factual allegations of the complaint are accepted as true, except those pertaining to damages. See Au Bon Pain Corp., 653 F.2d at 64-65. "The court must determine the amount of damages, actual or statutory, that may be assessed." Santillan, 822 F. Supp.2d at 290. "The court must also ensure that there is a reasonable basis for the damages specified in a default judgment." Id.

In order to support a claim for damages, "[a] plaintiff must therefore substantiate a claim with evidence to prove the extent of damages." Almanzar v. 1342 St. Nicholas Avenue Restaurant Corp., No. 14-cv-07850 (VEC) (DF), 2016 WL 8650464, at *4 (S.D.N.Y. Nov. 7, 2016) (Dkt. No. 76) (citing Trehan v. Von Tarkanyi, 63 B.R. 1001, 1008 n.12 (S.D.N.Y. 1986). The plaintiff "must introduce sufficient

4

evidence to establish the amount of damages with reasonable certainly." RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L., No. 12-cv-01369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013) (Dkt. No. 40). "The plaintiff is entitled to all reasonable inferences from the evidence it presents." U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Envtl. Universal Servs. Inc., No. 11-cv-00730 (CS) (PED), 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (Dkt. No. 72).

Where there is no submission from a defaulting defendant, the Court must assess whether the plaintiff has provided a sufficient basis for determining damages. See Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting "the court's obligation to ensure that the damages were appropriate"). The plaintiff's submitted proofs may serve as the sole basis for the Court's determination evaluation of plaintiff's damages claim. See, e.g., Garden City Boxing Club, Inc. v. Hernandez, No. 04-cv-02081 (LAP) (DF), 2008 WL 4974583, at *2 (S.D.N.Y. Nov. 24, 2008) (Dkt. No. 15) ("[A] hearing is not required where the plaintiff provides the court with evidence sufficient to permit a damages calculation."). While a hearing *may* be held on the issue of damages, the Federal Rules of Civil Procedure "leave[] the decision of whether a hearing is necessary to the discretion of the district court." Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991); Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).

A defendant in default "deprive[s] the plaintiff of the necessary employee records… thus hampering plaintiff's ability to prove his damages." Santillan, 822 F.

5

Supp. 2d at 294 (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946) (stating that when an employer has not kept proper records under the FLSA, the employee should not be penalized, and that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated"); see Almanzar, 2016 WL 8650464, at *5 (extending the same principle to claims brought under the NYLL). In these situations, a plaintiff can meet the burden of proof "by relying on recollection alone," and in the absence of rebuttal from the employer the plaintiff's recollections "are presumed to be correct." Santillan, 822 F. Supp. 2d at 294 (E.D.N.Y. 2011) (collecting cases). Furthermore, the NYLL states that in cases where an employer fails "to keep adequate records or provide statements of wages to employees… the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. L. § 196-a(a).

The applicable statute of limitations for claims under the NYLL is six years. N.Y. Lab. L. § 663(3).

### B. **Determination of Damages**

1. Unpaid Wages Claims

Under the NYLL, a plaintiff is entitled to recover "full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action." N.Y. Lab. L. § 198(3); Almanzar, 2016 WL 8650464, at *6. The minimum wage in New York City for the relevant time periods was $9.00 in 2016; $11.00 in 2017; $13.00 in 2018; and $15.00 in 2019. 12 N.Y.C.R.R. § 146-1.2.

6

The NYLL sets overtime pay at one and one-half times the regular hourly rate for each employee. 12 N.Y.C.R.R. § 146-1.4. Thus, the overtime pay owed for the relevant time periods was $13.50 in 2016; $16.50 in 2017; $19.50 in 2018; and $22.50 in 2019.

Plaintiff Ayala alleges that throughout his employment with defendants, he typically worked 52 hours per week. Compl. ¶ 45; Ayala Decl. ¶ 15. He also alleges that he was paid $7.50 per hour in 2016; $8.50 per hour in 2017; $9.00 per hour in 2018; and $12.00 in 2019. Through all these periods, he alleges he was paid time and a half for some of his overtime hours. Compl. ¶¶ 47-50; Ayala Decl. ¶¶ 17, 19-20. Plaintiff Ayala's damages for unpaid wages therefore are calculated as below:

| Pay Period | Weeks in Pay Period | Hours per Week | Hourly Wage | Overtime Wage | Weekly Pay | Lawful Hourly Wage | Lawful Overtime Wage | Lawful Weekly Pay | Underpayment per Week |
|---|---|---|---|---|---|---|---|---|---|
| 3/1/2016-12/31/2016 | 44 | 52 | $7.50 | $11.25 | $435.00 | $9.00 | $13.50 | $522.00 | $87.00 |
| 1/1/2017-12/31/2017 | 52 | 52 | $8.50 | $12.75 | $493.00 | $11.00 | $16.50 | $638.00 | $145.00 |
| 1/1/2018-12/31/2018 | 52 | 52 | $9.00 | $13.50 | $522.00 | $13.00 | $19.50 | $754.00 | $232.00 |
| 1/1/2019-9/30/2019 | 39 | 52 | $12.00 | $18.00 | $696.00 | $15.00 | $22.50 | $870.00 | $174.00 |

Thus, Plaintiff Ayala is entitled to damages as follows: $3,828.00 for weeks worked in 2016; $7,540.00 for weeks worked in 2017; and $12,064 for weeks worked in 2018. Plaintiff Ayala alleges that he was not paid at all for his last five weeks of employment in 2019. Therefore, for the other 34 weeks worked in 2019 Plaintiff Ayala is entitled to damages of $5,916.00, and for the last five weeks during which he received nothing he is entitled to $4,350.00. In total, Plaintiff Ayala's damages for unpaid wages come to $33,698.00.

Plaintiff Salustio alleges that from 11/1/2017 to 12/31/2018 he typically worked 61.25 hours per week. From 1/1/2019 to 9/30/2019 he alleges that he typically worked 55 hours per week. Plaintiff Salustio alleges that from 1/1/2018 to 12/31/2018 he was paid $11.00, instead of the minimum wage of $13.00. For the rest of his employment with Defendants, Plaintiff Salustio was paid at or above the minimum wage. As such, Plaintiff Salustio's damages for unpaid wages are calculated as below:

| Pay Period | Weeks in Pay Period | Hours per Week | Hourly Wage | Overtime Wage | Weekly Pay | Lawful Hourly Wage | Lawful Overtime Wage | Lawful Weekly Pay | Underpayment per Week |
|---|---|---|---|---|---|---|---|---|---|
| 1/1/2018-12/31/2018 | 52 | 61.25 | $11.00 | $16.50 | $790.63 | $13.00 | $19.50 | $934.38 | $143.75 |

Plaintiff Salustio is therefore entitled to damages for unpaid wages in the amount of $7,475.00. Plaintiff Salustio also alleges that he was not paid for his last five weeks of work. As his hourly rate at that time was $18.00 and he alleges he worked 55 hours per week at that time, he is entitled to further damages of $5,625.00. In total, Plaintiff Salustio's damages for unpaid wages come to $13,100.00.

Plaintiff Ayala's damages for unpaid wages are $33,698.00. Plaintiff Salustio's damages for unpaid wages are $13,100.00. The total amount in damages for unpaid wages is $46,798.00.

2. Spread-of-Hours Claims

Employees may also be entitled to "spread-of-hours" pay in addition to damages for unpaid wages and overtime. 12 N.Y.C.R.R. §146-1.6. "Spread-of-hours" pay is equal to "one additional hour of pay at the basic minimum hourly rate" for each day on which the spread of hours exceeds ten. 12 N.Y.C.R.R. § 146-1.6(a). "Spread

8

of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours." Angamarca v. Pita Grill 7 Inc., No. 11-cv-07777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012) (Dkt. No. 38).

Plaintiff Ayala alleges that throughout his time working for Defendants, he worked days with a spread of over ten hours two times per week. Compl. ¶ 45; Ayala Decl. ¶ 15. Plaintiff Salustio states that from November 2017 until December 2018, he worked days with a spread of over ten hours five times per week. Compl. ¶ 67; Salustio Decl. ¶ 15. From January 2019 until his termination in September 2019, he worked days with a spread of over ten hours four times per week. Compl. ¶ 68; Salustio Decl. ¶ 16.

As such, Plaintiffs' "spread-of-hours" pay can be calculated as demonstrated below:

| Ayala | Pay Period | Number of weeks | SOH Days per Week | Minimum Wage | SOH per pay period |
|---|---|---|---|---|---|
| | 3/1/2016-12/31/2016 | 44 | 2 | $9.00 | $792.00 |
| | 1/1/2017-12/31/2017 | 52 | 2 | $11.00 | $1,144.00 |
| | 1/1/2018-12/31/2018 | 52 | 2 | $13.00 | $1,352.00 |
| | 1/1/2019-9/30/2019 | 39 | 2 | $15.00 | $1,170.00 |
| | | | | **Total:** | $4,458.00 |

9

| Salustio | Pay Period | Number of weeks | SOH Days per Week | Minimum Wage | SOH per pay period |
|---|---|---|---|---|---|
| | 11/1/2017-12/31/2017 | 9 | 5 | $11.00 | $495.00 |
| | 1/1/2018 | 52 | 5 | $13.00 | $3,380.00 |
| | 1/1/2019-9/30/2019 | 39 | 4 | $15.00 | $2,340.00 |
| | | | | **Total:** | $6,215.00 |

Plaintiff Ayala is entitled to $4,458.00 for "spread-of-hours" pay. Plaintiff Salustio is entitled to $6,215.00 for the same. In total, Plaintiffs are entitled to $10,673.00 in "spread-of-hours" pay.

3. Recordkeeping and Wage-Statement Claims

The NYLL requires employers to provide a wage notice and wage statements to every employee. N.Y. Lab. L. §§ 195(1), 195(3). Plaintiffs allege that Defendants never provided either of these to them, throughout the duration of their employment. See Compl. ¶¶ 57-58; 79-80. Violation of § 195(1) carries with it damages of "fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." N.Y. Lab. L. § 198(1-b). Violation of § 195(3) carries with it damages of "two hundred fifty dollars for each work day that the violations occurred or continue to occur," also capped at five thousand dollars. N.Y. Lab. L. § 198 (1-d).

As both Plaintiff Ayala and Plaintiff Salustio worked for Defendants for over 100 days and experienced on-going violations of the wage notice and statement provisions, the statutory cap is mandated for each violation. As such, Plaintiff Ayala is entitled to $10,000 in damages for the NYLL's wage statement and wage notice

10

requirements. Plaintiff Salustio is also entitled to $10,000 for the same. In totally Plaintiffs are awarded $20,000.00 in damages for violation of the NYLL's wage statement and wage notice requirements.

4. Claims for Unlawful Deductions

The NYLL prohibits an employer from demanding or accepting "directly or indirectly, any part of the gratuities, received by an employee, or retain[ing] any part of a gratuity or of any change purported to be a gratuity for an employee." N.Y. Lab. L. § 196-d. Plaintiff Ayala alleges that Defendants withheld $500.00 in tips from him in May 2019. Compl. ¶ 54; Ayala Decl. ¶ 25. Plaintiff Salustio alleges the same. Compl. ¶ 76; Salustio Decl. ¶ 25.

Plaintiff Ayala is entitled to $500.00 for retained gratuities. Plaintiff Salustio is entitled to $500.00 for the same. In sum, Plaintiffs are entitled to damages in the amount of $1,000.00 for retained gratuities in violation of the NYLL.

5. Liquidated Damages

Under the NYLL, unless an employer can provide a "good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments [is] found to be due." N.Y. Lab. L. § 663(1); N.Y. Lab. L. § 198(1-a). "The employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness." Galeana v. Lemongrass on Broadway Corp., 120 F. Supp. 3d 306, 317 (S.D.N.Y. 2014) (interpreting the standard for purposes of liquidated damages under the FLSA); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261 (S.D.N.Y. 2008) (noting the analysis is the same for

11

liquidated damages under the NYLL as under the FLSA). As Defendants are in default, they have not demonstrated good faith, and as such liquidated damages are available to Plaintiffs. See Galeana, 120 F. Supp. 3d at 317; Almanzar, 2016 WL 8650464, at *15.

"Plaintiffs are also entitled to liquidated damages on the spread-of-hours under state law if the violation was willful." Galeana, 120 F. Supp. 3d at 319 (finding that plaintiffs were entitled to liquidated damages on their "spread-of-hours" claim if the violation was willful). Plaintiffs' liquidated damages are therefore the sum of their damages for the unpaid wages and the spread of hours pay. For Plaintiff Ayala this comes to $38,156.00. For Plaintiff Salustio liquidated damages comes to $19,315.00. In total, liquidated damages come to $57,471.00.

6. Pre-judgment Interest for Unpaid Wages

Plaintiffs seek pre-judgment interest on their claims under the N.Y.L.L. for unpaid wages. See Inquest Memorandum at 11, dated July 30, 2021 (Dkt. No. 37). The NYLL allows for recovery of prejudgment interest on any underpayments. N.Y. Lab. L.§ 663(1). The New York Civil Practice Law and Rules further set a prejudgment interest rate of 9% per annum simple interest. N.Y. C.P.L.R. § 5004. When "damages were incurred at various times," as in this case, interest may be calculated "upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Plaintiffs are entitled to interest on the amount of their unpaid wages and unpaid "spread-of-hours" pay, which is $57,471.00. The Court finds that the simple nine percent per annum interest is warranted.

For Plaintiff Ayala, interest shall be computed from the date that will be determined by the Court of Clerk to be the midpoint between April 1, 2016 and the date preceding the date on which the final judgment is entered in this action.

For Plaintiff Solustio, interest shall be computed from the date that will be determined by the Court of Clerk to be the midpoint between December 1, 2017 and the date preceding the date on which the final judgment is entered in this action.

7. Attorney's Fees and Costs

Courts in this Circuit use a "presumptively reasonable fee" standard to determine the reasonableness of attorney's fees sought in an action. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). This 'lodestar' is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). A reasonable hourly rate is "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 208 (2d Cir. 2005).

Four timekeepers were identified in this matter: Michael Faillace, William K. Oates, Daniel Tannenbaum, and an un-named paralegal. Decl. of Michael Faillace in Support of Inquest ¶ 66, dated July 30, 2021 (Dkt. No. 39). Mr. Faillace's hourly rate is listed at $450.00 per hour; the provided biography states that Mr. Faillace is the managing member of his law firm, and that he is "a nationally renowned speaker and writer on employment law." Id. at ¶ 67. Since then, Mr. Faillace has been issued a two-year suspension on practicing in the Southern District of New York. See In the matter of Michael Faillace, No. 21-mc-3192 (S.D.N.Y. Nov. 9, 2021). Mr. Faillace was

accused of several violations, including keeping funds in excess of his attorney fees. In light of this behavior and his suspension, Mr. Faillace's fee is reduced to $300.00.

Mr. Faillace's associates' fees, however, will stand. Mr. Oates's hourly rate is listed at $400.00 per hour. Faillace Decl. ¶ 66. Mr. Oates is an associate at Michael Faillace & Associates, P.C., who has presumably in practice for over 15 years, since his graduation from law school in 1995. Id. at ¶ 67. He "has practiced labor and employment law" in the course of his career, and since joining his current firm "he has been responsible for a caseload involving all aspects of the firm's employment docket in federal court." Id. Mr. Oates's hourly rate of $400.00 is found to be reasonable.

Mr. Tannenbaum's hourly rate is listed at $350.00 per hour. Faillace Decl. ¶ 66. Mr. Tannenbaum has "practiced labor and employment law… at a number of law firms" and is currently "responsible for a caseload involving all aspect of the firm's employment docket in federal court." Id. at ¶ 67. Mr. Tannenbaum's rate of $350.00 is found to be reasonable.

No information is provided about the paralegal who billed time to this matter. As such, the Court cannot perform "a case specific inquiry into the prevailing market rates for paralegals of similar experience and skill." Lee v. Woodstock Outdoor Co., No. 17-cv-07696 (JPO) (KNF), 2020 WL 5606157, at *12 (S.D.N.Y. Sept. 2, 2020) (Dkt. No. 66). In addition, the entries billed to "PL" are inconsistent and in some places appear to be duplicative. The Court finds that the fees attributed to the paralegal

have not been shown to be reasonable. Similarly, no information is provided for a billing entry attributed to "KH," thus that fee is stricken as well.

The other entries indicated in Ex. I to the Faillace Declaration are found to be reasonable. Plaintiffs indicate 10.40 hours of work on this matter. Considering the simple nature of this matter and the resulting default, these hours are reasonable. The Court recommends that attorney fees be awarded, less the fees attributed to the paralegal and the reduction in Mr. Faillace's rate. This comes to $2,550.00.

NYLL § 663 entitles plaintiffs to recover costs from the Defendant. Plaintiffs seek $750.00 in costs, covering the filing fee and process servers. See Faillace Decl. ¶ 64; see also Ex. I ("Michael Faillace & Associates, P.C. Billing Report"). The Court finds that $750.00 is a reasonable amount for costs expended in connection with this action.

In sum, the Court finds that the reasonable amount of attorney's fees and costs is $3,300.00.

## RECOMMENDATION

For the reasons stated above, this Court recommends that Plaintiffs be awarded damages as follows: (1) damages for unpaid wages under the NYLL in the amount of $46,798.00; (2) damages for unpaid spread-of-hours-pay under the NYLL in the amount of $10,673.00; (3) damages for violations of the wage notice and wage statement provisions of the NYLL in the amount of $20,000; (4) damages for unlawful deductions in the amount of $1,000.00; (5) liquidated damages in the amount of $57,471.00; (6) attorney's fees and costs in the amount of $3,300.00; and (7) pre-

judgment interest as determined by the Clerk of Court. In total, Plaintiffs are awarded $139,242.00, as well as interest once calculated.

## **FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF. Any requests for an extension of time for filing objections must be directed to Judge Abrams. **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**. See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: July 13, 2022
   New York, New York

                Respectfully submitted,

                *Jennifer E. Willis*
                Jennifer E. Willis
                United States Magistrate Judge